**Kenneth N. CAMPBELL, Plaintiff,**

v.

**FASCO INDUSTRIES, INC., a corporation, Defendant.**

No. 93 C 0828.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 16, 1994.

Gerald A. Goldman, Arthur R. Ehrlich, Goldman & Marcus, Chicago, IL, for plaintiff.

Michael Alan Reiter, Julie Lynn Schulz, Holleb & Coff, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is the motion of defendant, Fasco Industries, Inc. ("Fasco"), for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the court grants defendant's motion.

## I. FACTUAL BACKGROUND [1]

On February 9, 1993, plaintiff Kenneth Campbell filed his Complaint against defendant Fasco alleging that he was discharged

in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). Plaintiff is a fifty-eight year old former employee of Fasco's Motors Division, which manufactures a broad line of motors, blowers, fans, and other products for a variety of markets including heating, ventilating, air conditioning, compressors, pumps, appliances, machine tools, and aircraft. (Defendant's Statement of Material Facts as to Which There is No Genuine Issue ("Defendant's 12(m) Statement") at 1–2.). In 1980, Fasco was acquired by the Hawker Siddeley Group Public Limited Company of London, England ("Hawker Siddeley"). Hawker Siddeley was in turn acquired by a subsidiary of BTR plc, a British corporation, in 1991. (*Id.* at 2.)

In or around 1978, Fasco purchased a material requirement planning ("MRP") integrated computer system known as the MRP II system, which used SMI software and Microdata hardware. The MRP II system was designed to track certain cost accounting and manufacturing functions for the Fasco Motors Division, thereby controlling inventory and maximizing cash flow. (*Id.* at 2–3.) During the first few years after it purchased the MRP II system, Fasco encountered some difficulty utilizing the system to its full potential. (*Id.* at 3.)

To address the problems Fasco was experiencing with the MRP II system, John Locke, Hawker Siddeley Director of Management Resources in England, decided to create a Fasco Systems Team. In January 1982, Locke hired Dwight Gressel to work on the Systems Team. Gressel had previously worked for Fasco as a consultant and was given the position of Project Leader of Manufacturing on the Systems Team. Locke also hired Joe Bradley as Project Leader of Finance and Rick Green as Project Leader of Data Processing at this time. In March 1982, Locke hired Campbell to be the Systems Team Manager. Gressel was involved in this hiring decision. (*Id.* at 3.)

---

1. This section of the opinion discusses matters not in dispute. Where a factual dispute exists (the critical factor on a summary judgment mo-tion), the issue will be dealt with in the discussion of legal principles.

Over the next couple of years, the Systems Team expanded to include up to nine people working either as systems analysts or computer programmers. The team was responsible for the successful operation of the MRP II system at all five plants. The primary task of the Systems Team in the early and mid-1980s was to implement the MRP II system at each Fasco plant. Implementation included training plant employees in the use of the system, creating computer programs to support the system, and troubleshooting to keep the system operating. The MRP II system was in place at Fasco's Motors Division plants until approximately 1990. Around 1988, Fasco decided to replace the MRP II system with a new, more advanced MRP system. (*Id.* at 4.)

A selection committee was formed to study and choose the replacement system, consisting of Campbell, Gressel, Green, and Dale Rose of the Systems Team, as well as systems coordinators from other departments at Fasco. The plant managers and Milo Evans, the Fasco executive responsible for the Systems Team, were also involved in the selection process. The selection committee reviewed various software and hardware vendors and ultimately chose what is known as the DEC/ASK system. The Systems Team began implementing the DEC/ASK system in Fasco's various plants. As of Campbell's termination on February 18, 1991, the DEC/ASK system had not yet been implemented at two of the Fasco plants. (*Id.* at 5–6.)

From September 1987 through February 18, 1991, Campbell reported to Milo Evans. It was Evans's responsibility as Division Controller and later as Vice President of Finance to direct the efforts of the Systems Team and to ensure that the team met its objectives. In February 1990, Evans wrote a performance review of Campbell in which Evans gave Campbell an overall unacceptable job rating for 1989. On May 2, 1990, Evans prepared a written evaluation critical of Campbell's performance.[2] Campbell did, however, receive bonuses in 1989 and 1990. (*Id.* at 6–8.)

In January and February 1991, Evans analyzed Fasco's current and projected financial condition and compiled his findings in two memoranda. In these memoranda, Evans observed that in 1990, the core business of Fasco Motors Division experienced a $16,941,000 decrease in its budget, and a $2,623,000 decrease in sales from 1989. In addition, in 1990, Fasco experienced a trading loss of $34,000 compared to a budgeted profit of $28,395,000. The decline continued in 1991, as Fasco's profits for January 1991 were $292,000, down from $1,052,000 in January 1990. Based on these statistics, Evans concluded that Fasco's profitability was declining in 1991, and recommended that cost reduction programs be implemented. (*Id.* at 8–9.)

In February 1991, Roderic Karpen, President of Fasco, instituted a salary freeze and directed Evans to cut costs by eliminating

**2.** Evans wrote to Campbell:

Your performance for 1989, was not satisfactory, The main reasons for this unsatisfactory rating relate to your ability to work with other key managers within the company, coordination of projects and the lack of leadership during the selection of the DEC/ASK computer system[.]

A manager of the Systems Team needs to provide a very positive and business oriented, rather than technical oriented, management style. You should be dealing directly with the plant managers and their staff in the solution of the business reporting problems throughout our company. [T]his requires interface with the plant management people. This is an area where your performance has not been up to par as we discussed, you need to spend more time with the plant management and their staff level people and follow-up coordination of systems projects.

The other area we talked about was the requirement to put more work into the decision making process. It isn't always the answer to just buy additional hardware or software, in solving a particular systems problem. We talked about the meeting that we had the fourth day that I was on the job where you suggested upgrading the microdata computers at the motor plant locations. Rather than spending several hundred thousand dollars, we spent in the area of a hundred thousand dollars because the real problem was not hardware, it was Systems information processing. A similar situation occurred in Eldon whereby, the original answer to the problem was to buy more hardware and software, when in fact, it turned out to again be a problem of information processing, rather than limitations of equipment.

(Defendant's 12(m) Statement at 7–8 & Ex. 5.)

three positions within the Systems Team. As of February 1991, only three of the nine members of the Systems Team were under the age of forty. Following Karpen's directive, Evans terminated two Systems Team members, Campbell (age 55)[3] and Warren Olson (age 41). As part of the reduction in force ("RIF"), Evans transferred Richard Clermont (age 54) from his position as computer programmer on the Systems Team to an open computer programming position in another department. (*Id.* at 9–10.)

After Campbell was terminated, Evans selected Gressel to become the Acting Systems Team Manager. Gressel's primary responsibilities and duties did not significantly change. He continued to implement the DEC/ASK system at the Cassville, Missouri, plant, his primary responsibility as Project Leader of Manufacturing. He did, however, take on the additional responsibilities of reporting to Evans and coordinating work assignments for the Systems Team. Gressel did not receive a pay increase, nor did he move into Campbell's old office. (*Id.* at 12–13.) In March 1992, Fasco determined it no longer needed a Systems Team and dismantled the group entirely. (*Id.* at 13.)

## II. *LEGAL STANDARD*

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, present no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). When reviewing the record on summary judgment, this court must draw all reasonable inferences in the light most favorable to the nonmovant.

*Anderson v. Stauffer Chemical Co.,* 965 F.2d 397, 400 (7th Cir.1992). To avert summary judgment, however, plaintiff must do more than raise " 'some metaphysical doubt as to the material facts.' " *Beard v. Whitley County REMC,* 840 F.2d 405, 410 (7th Cir. 1988) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted)). Instead, he must present specific facts showing a genuine issue for trial. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553. A dispute about a material fact is genuine only if the evidence presented is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Nevertheless, summary judgment must be approached with special caution in employment discrimination cases because intent is often a crucial issue, and intent is often not susceptible to resolution through summary judgment. *See Beard,* 840 F.2d at 410.

## III. *ANALYSIS*

The ADEA prohibits an employer from discriminating against an employee on the basis of age.[4] To succeed on an age discrimination claim, a plaintiff must prove[5] that age was a determining factor in the employer's adverse employment decision. *McCoy v. WGN Continental Broadcasting Co.,* 957 F.2d 368, 371 (7th Cir.1992). Under this standard, a plaintiff need not prove that age was the sole motivating factor, but that he would not have suffered the adverse employment decision but for the employer's intent to discriminate on the basis of age. *Id.*

There are two ways in which a plaintiff in an age discrimination suit may prove his claim. He " 'may try to meet [his] bur-

---

**3.** All ages are as of February 1991.

**4.** The ADEA states in pertinent part:

"(a) It shall be unlawful for an employer—
(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age...."
29 U.S.C. § 623(a)(1).

**5.** This opinion will refer to what an ADEA plaintiff must prove because that is the terminology employed in the controlling case law. It should, however, be emphasized that in opposing a motion for summary judgment, a plaintiff need only advance evidence sufficient to create a genuine issue of material fact. Thus, the latter standard, rather than the preponderance of the evidence standard, is the interpretation that should be given to the court's analysis of plaintiff's proffered evidence.

den head on by presenting direct or circumstantial evidence that age was the determining factor in [his] discharge.... Or, as is more common, [he] may utilize the indirect, burden-shifting method of proof for Title VII cases originally set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 [36 L.Ed.2d 668] (1973), and later adapted to age discrimination claims under the ADEA.'" *Weihaupt v. American Medical Ass'n*, 874 F.2d 419, 424 (7th Cir.1989) (quoting *Oxman v. WLS–TV*, 846 F.2d 448, 452 (7th Cir.1988)). Plaintiff employs both methods in an attempt to prove that age was a determining factor in his termination from Fasco.

**A. Direct Method**

■■■ "In a direct evidence case, plaintiff initially must prove 'through direct evidence that the employment decision at issue was based upon an impermissible factor.'" *McCarthy v. Kemper Life Ins. Cos.*, 924 F.2d 683, 686 (7th Cir.1991) (quoting *Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 568 (7th Cir.1989)). Under the direct method of proof, plaintiff's evidence may be direct, circumstantial, or a combination of both. *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir.1994); *Perfetti v. First Nat'l Bank of Chicago*, 950 F.2d 449, 450 (7th Cir.1991) ("[T]he first type of evidence in a discrimination suit is direct evidence that age was a determining factor, such as discriminatory statements uttered by the employer's decision-maker. The second type of evidence is circumstantial evidence that age was a determining factor, such as a statistical imbalance in the employer's work-force."). If plaintiff succeeds at proving that age was a motivating factor in his termination, " 'the defendant must respond by proving by a preponderance of the evidence that it would have made the same employment decision

even if it had not taken the impermissible factor into account.'" *McCarthy*, 924 F.2d at 686 (quoting *Randle*, 876 F.2d at 569). Plaintiff proffers both direct and circumstantial evidence in an attempt to establish that age was a motivating factor in defendant's decision to terminate him.[6]

**1. *Plaintiff was the oldest member of the Systems Team and was replaced by a younger employee***

■■■ Plaintiff offers no facts in support of his claim that he was replaced by another employee. It is undisputed that, after Campbell's termination, Dwight Gressel assumed the title of "Acting Systems Team Manager." However, a title is not determinative. Plaintiff must show that Gressel's new position is substantially the same as the position Campbell occupied at Fasco. *See Monroe v. United Air Lines, Inc.*, 736 F.2d 394, 403 (7th Cir.), *cert. denied*, 470 U.S. 1004, 105 S.Ct. 1356, 84 L.Ed.2d 378 (1984). Defendant stated in its 12(m) Statement that Gressel's primary responsibilities and duties did not significantly change, that Gressel continued to implement the DEC/ASK system at the Cassville plant (his primary responsibility before Campbell's termination), and merely took on the additional responsibilities of reporting to Evans and coordinating work assignments for the Systems Team. (Defendant's 12(m) Statement at 12–13.) Plaintiff did not deny this statement of undisputed fact, asserting instead that "[w]hile Defendant claims that Gressel's duties did not change 'significantly', Defendant implicitly admits that Gressel's duties did change." (Plaintiff's Response to Defendant's Statement of Facts to Which it Believes There is No Dispute ("Plaintiff's 12(n) Statement") at 5.) Thus, the court accepts defendant's contention that Gressel did not replace plaintiff.[7]

---

**6.** The court will first analyze each piece of evidence separately to determine its relevancy, and then will determine whether the relevant evidence in the aggregate is sufficient to withstand defendant's motion for summary judgment. Thus, the fact that plaintiff's evidence is analyzed separately should not be taken to mean that the court did not consider the evidence as a whole. *See Oxman v. WLS–TV*, 12 F.3d 652, 658 (7th Cir.1993) (district court's mission is to view the evidence in its totality).

**7.** "Local Rule 12(m) ... requires a party opposing a motion for summary judgment to file, in addition to the evidentiary materials required by Rule 56(e), a response listing the factual assertions by the movant with which the opponent disagrees." *Bell, Boyd & Lloyd v. Tapy*, 896 F.2d 1101, 1102 (7th Cir.1990). The list must be supported by specific references to the evidentiary materials relied on and must set forth any additional facts that require denial of summary

Nevertheless, even if the court assumes that Gressel did replace Campbell, this is not direct or circumstantial evidence of discrimination. *See Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 658–59 (7th Cir.1991) (neither plaintiff's age nor the fact that he was replaced by a much younger man is evidence of age discrimination). An employer does not violate the ADEA merely by discharging an employee whose age falls within the protected category and replacing him with a younger worker. *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1413 (7th Cir.1984). Indeed, "[b]ecause younger people often succeed to the jobs of older people for perfectly legitimate reasons, the mere fact that an older employee is replaced by a younger one does not permit an inference that the replacement was motivated by 'age discrimination.'" *Monaco v. Fuddruckers, Inc.*, 1 F.3d 658, 661 (7th Cir.1993) (quoting *La Montagne*, 750 F.2d at 1413). Plaintiff's evidence that he was the oldest member of the systems team and was replaced by a younger man, thus, merely places him within the protected class and establishes injury. *See Daugherity v. Traylor Bros., Inc.*, 970 F.2d 348, 354 (7th Cir.1992) (evidence that terminated employee was oldest laborer in his work group merely establishes *prima facie* case under *McDonnell Douglas* framework). Plaintiff's evidence therefore will be considered under the *McDonnell Douglas* method of proof, discussed below.

### 2. *Corroborating statements by Tom Beyer and Marv Haynes as to Fasco's policy of discriminating against older workers*

Plaintiff alleges that Tom Beyer, Head of Purchasing, and Marv Haynes, Head of Engineering–Production, made statements indicating that Fasco engaged in discriminatory practices. (*See* Plaintiff's Response to Defendant's Motion for Summary Judgment ("Plaintiff's Memorandum") at 3–4.) According to plaintiff, Beyer and Haynes stated that Fasco employees over the age of 50 or 55

(plaintiff didn't remember which) only received raises every three years, while employees under that age received annual raises. Defendant objects to the admission of these statements, arguing that they are inadmissible hearsay which cannot be considered here. (Reply of Fasco Industries, Inc. in Further Support of Its Motion for Summary Judgment at 13.) Plaintiff, however, claims these statements are not hearsay because of the management-level positions Beyer and Haynes held. (Plaintiff's Memorandum at 4.) The court assumes that plaintiff is attempting to have these statements admitted under Federal Rule of Evidence 801(d)(2)(D), as statements by agents against their employer.

Rule 801(d)(2)(D) provides that "[a] statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of that relationship." Such statements are presumably reliable in the absence of cross-examination because an agent "who speaks on any matter within the scope of his agency or employment during the existence of that relationship, is unlikely to make statements damaging to his principal or employer unless those statements are true." *Nekolny v. Painter*, 653 F.2d 1164, 1172 (7th Cir. 1981), *cert. denied*, 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982).

To be admissible under Rule 801(d)(2)(D), however, the statements must *concern* matters within the scope of the declarant's employment, not just be made within the scope of his employment. *See id.* (statements of employee admissible against employer in civil rights action where employee worked closely with declarant and was involved in decision-making process on which he spoke); *see also Cebula v. General Elec. Co.*, 614 F.Supp. 260, 266 (N.D.Ill.1985) (statements inadmissible under Rule 801(d)(2)(D) where declarants were lower-level employees and no evidence suggested that they were involved in the decision to fire

judgment, also supported by specific references to the record. Any facts asserted by the movant and not contradicted in the manner specified by the rule are deemed admitted. *Id.* Because

plaintiff failed to make the required citation and merely offered theories instead of facts, the court must accept the defendant's version as uncontroverted.

plaintiff). In the present case, plaintiff has offered no evidence that Beyer and Haynes were involved in deciding when and to whom raises were to be given. Consequently, they were not speaking about matters within the scope of their employment for purposes of Rule 801(d)(2)(D).[8]

### 3. *Systematic elimination of employees over the age of forty and replacement by younger workers*

■ Plaintiff alleges that a review of Fasco's pension files [9] shows that the majority of employees who were terminated by defendant between 1986 and 1989 were over the age of forty. (Plaintiff's Memorandum at 4.) According to plaintiff, 98 out of the 160 salaried employees—a ratio of 1.6 to 1—who were terminated during these years were over the age of forty. (Campbell Aff. at 7–8.) [10]

Plaintiff's statistics are flawed as a matter of law in two major respects, however, and are thus not evidence of age discrimination. First, in coming to the conclusion that 98 out of 160 employees that Fasco terminated between 1986 and 1989 were over forty, plaintiff used the "termination" date listed on the pension files. (Campbell Dep. at 399–403.)

However, the termination date is merely the date on which the employee ceased working for Fasco. (Campbell Aff. at 400.) The pension files do not distinguish between retirement, voluntary resignation, termination for cause, death, or termination due to a RIF. (Campbell Dep. at 399–403.) Moreover, plaintiff admitted that he had no knowledge as to why any of the older employees left Fasco. (Campbell Dep. at 403–04.) Therefore, plaintiff's statistical evidence only shows that 98 people over the age of forty and 62 people under the age of forty left the employment of Fasco between 1986 and 1989. Without evidence of why these employees left Fasco, these statistics are meaningless.

Plaintiff's statistics are flawed in a second respect. Without analyzing the age breakdown of Fasco's work force between 1986 and 1989, plaintiff is unable to tell the court whether a larger percentage of older people left defendant's employment than did younger people. If more than 61.25% of defendant's salaried employees were over the age of forty, defendant's statistics would prove that a greater percentage of *younger* people left Fasco's employment than did *older* people.[11] Thus, without including the number of

---

**8.** Plaintiff's position on this point suffers another weakness as well. "A plaintiff may submit probative statistical evidence to show that the employer's proffered reason for the employment decision was a pretext for discrimination." *Box v. A & P Tea Co.*, 772 F.2d 1372, 1379 (7th Cir.1985), *cert. denied*, 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986). The statistics, however, must be relevant. *Id.* Plaintiff's evidence indicated that employees in the protected age group received pay increases less often than did employees not in the protected group. While such evidence would be relevant to a claim of wage discrimination, it has no relevance to plaintiff's claim of discriminatory firing. *See id.* at 1379–80 (statistics showing promotions given to men at significantly greater rate not probative of discrimination in discharge claim) (citing *Coates v. Johnson & Johnson*, 756 F.2d 524, 545 (7th Cir.1985)).

**9.** Because plaintiff was responsible for creating, updating and analyzing the pension files (Campbell Aff. at 3), he has personal knowledge of the evidence he submits.

**10.** Defendant objects to the admission of reference to these pension files, arguing that plaintiff did not turn these files over to defendant until November 17, 1993, two months after discovery

had closed and two days after plaintiff had been served with defendant's motion for summary judgment. (Defendant's Memorandum in Support of its Motion for Summary Judgment at 7.) Plaintiff contends that he turned over the pension files before he was served with a copy of defendant's motion for summary judgment. (Plaintiff's Memorandum at 4 n. 1.) The court need not resolve this issue, however, because the statistics proffered by plaintiff are flawed and, thus, are not evidence of discrimination.

**11.** Plaintiff alleges that between 1986 and 1989, 160 salaried employees left Fasco: 98 over the age of forty and 62 under the age of forty. (Plaintiff's Aff. at 7–8.) Thus, of the 160 employees that left, 61.25% were more than forty years old (98 divided by 160 equals 61.25%). Assume Fasco employs 1,000 salaried workers. If 62% were over the age of forty, defendant would employ 620 workers over the age of forty and 380 workers under the age of forty. If 98 of the 620 older workers left Fasco, Fasco would have lost 15.80% of its older employees. If 62 of its 380 younger employees left, it would have lost 16.31% of its younger employees. Thus, if over 61.25% of Fasco's employees during the relevant time period were over forty years of age, plaintiff's statistics would demonstrate that a greater

**1394**

salaried employees over and under the age of forty, plaintiff's statistics are not probative of age discrimination.

Similar statistics were rejected by the Seventh Circuit in *Dale v. Chicago Tribune Co.,* 797 F.2d 458 (7th Cir.1986), *cert. denied,* 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987). In *Dale,* the plaintiff offered data showing that seventy-seven management employees who left the Chicago Tribune between 1982 and 1984 were over the age of forty. *Id.* at 465. Included on the list were "all ADEA class Tribune management employees who left the employment of the Tribune for any reason, including death, transfer, promotion, disability, voluntary retirement, voluntary resignation, and involuntary termination." *Id.* Unlike plaintiff, Dale did have knowledge of the reason each employee left the Tribune. *Id.* The court nevertheless held that the statistical evidence was "riddled with defects" because Dale did not provide the court with "the total number of ADEA class managers that worked at the Tribune during the years in question." *Id.; see also Smith v. General Scanning, Inc.,* 876 F.2d 1315, 1321 (7th Cir.1989) ("[T]he fact that only nine of the 106 new hires were over 40 tells us nothing, since [plaintiff] omitted vital information regarding the pool of applicants and whether qualified older employees were available or even applied for those jobs."); *Cebula,* 614 F.Supp. at 265 ("[F]ive-to-one ratio of 'young' to 'old' employees is statistically meaningless without other evidence concerning the relative percentages of people that applied for these positions, as well as the relative percentages in the work force as a whole.")

The only other evidence in support of plaintiff's allegation that defendant eliminated more employees over the age of forty is his "observation." Although Plaintiff named several people who ceased working for Fasco between 1986 and 1989, plaintiff had no knowledge of their ages, why they left Fasco, who replaced them, or the ages of the replacements. (Campbell Dep. at 76–91.) "A party to a lawsuit cannot ward off summary judgment with an affidavit or deposition based on rumor or conjecture." *Palucki v.*

percentage of younger employees left Fasco than

*Sears, Roebuck & Co.,* 879 F.2d 1568, 1572 (7th Cir.1989). Because plaintiff's statements are offered without adequate foundation or supporting facts, they cannot create a genuine issue of material fact.

### 4. *No member of the Systems Team under the age of 40 was terminated because of the RIF*

Plaintiff argues that evidence of age discrimination is shown by the fact that no member of the Systems Team under the age of 40 was terminated due to Fasco's reduction in force ("RIF"). "At first glance, the plaintiff's statistical evidence appears to tell a dramatic story." *See Soria v. Ozinga Bros., Inc.,* 704 F.2d 990, 995 (7th Cir.1983) (rejecting similar "dramatic" statistical evidence based on small sample size). Yet, there are several problems with plaintiff's statistical evidence. First, it "lacks sufficient breadth to be trustworthy." *See Parker v. Federal Nat'l Mortgage Ass'n,* 741 F.2d 975, 980 (7th Cir.1984) (citing *Soria,* 704 F.2d at 994–97). Indeed, "[a] small change in the underlying raw data would result in dramatic statistical fluctuations." *Id.* (citing *Contreras v. City of Los Angeles,* 656 F.2d 1267 (9th Cir.1981), *cert. denied,* 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 140 (1982)). In *Parker,* the plaintiff argued that an inference of discrimination could be made from statistical evidence showing that three of four employees terminated from a group of 12 were over the age of 40. The court held that the small sample size employed by the plaintiff prevented the statistical evidence from giving rise to a reasonable inference of discriminatory motive. *Id.* at 980–81; *see also Lindsey v. Baxter Healthcare Corp.,* 757 F.Supp. 888, 897–88 (N.D.Ill.1991) (evidence that no one over the age of 40 was hired for nine open positions too scant to create inference of age discrimination), *aff'd in part & rev'd in part,* 962 F.2d 586 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 442, 121 L.Ed.2d 361 (1992); *Khan v. Grotnes Metalforming Sys., Inc.,* 679 F.Supp. 751, 762 (N.D.Ill.1988) (fact that none of five Swiss employees were terminated due to RIF too small a sample to be probative of discrimination on the basis of

did older employees.

national origin); *Zick v. Verson Allsteel Press Co.,* 644 F.Supp. 906, 912–23 (N.D.Ill. 1986) ("Merely saying six of eight employees terminated were over 40 makes too much of a very small statistical sample...." (footnote omitted)), *aff'd,* 819 F.2d 1143 (7th Cir.1987).

The same type of statistical evidence is presented by plaintiff. There were nine members of the Systems Team. (Defendant's 12(m) Statement at 9.) Six members were in the protected age group (over 40), while three members were under the age of forty. *Id.* Therefore, 66.7% of the Systems Team employees were in the protected class, while 33.3% were outside the protected class. Three positions on the Team were eliminated. *(Id.)* If defendant had chosen at random which three employees were to be terminated, two would have been from the protected class and one would have been outside the protected class. Whatever evidentiary significance that can be attached to an extra member of the protected group being terminated is too insignificant to create a reasonable inference of age discrimination.

Moreover, the facts surrounding the positions that were eliminated undermine any inference of age discrimination that could attach to these statistics. The *second oldest* member of the Systems Team, while his position on the team was eliminated, was transferred to an open position in another department. (Defendant's 12(m) Statement at 9; Plaintiff's Ex. B.) Moreover, Warren Olson, the other team member (besides Campbell) who was terminated was the *second youngest* member of the Systems Team. (Plaintiff's Ex. B.) It would be unreasonable, based on these facts, to conclude that age was a determining factor in Evans's decision of whom to terminate.

■ A second problem with plaintiff's statistical evidence is that he has not eliminated the most common nondiscriminatory explanations for this disparity. To create an inference that defendant discriminated against individual members of a class, plaintiff must show a significant disparity between defendant's treatment of employees over 40 and under 40 and " 'eliminate the most com-

mon nondiscriminatory explanations for the disparity,' " such as "the need to eliminate a program or position, the lower proficiency of the discharged employees, and/or random chance." *Nabat v. Aetna Casualty & Surety Co.,* No. 92 C 945, 1993 WL 390373, at *7 (N.D.Ill. Sept. 30, 1993) (footnote omitted) (quoting *Barnes v. GenCorp, Inc.,* 896 F.2d 1457, 1466 (6th Cir.1990)). In the present case, plaintiff has offered no evidence, such as performance reviews of the members terminated compared to the members not terminated, that would indicate that the terminations were anything other than a good faith business decision. Without such vital data, plaintiff's argument that these statistics create an inference of age discrimination is too speculative. *See Parker,* 741 F.2d at 980 ("The district court is not required to evaluate every *conceivable* inference which can be drawn from evidentiary matter, but only reasonable ones.").

### 5. *Discriminatory Statement of Milo Evans*

■ Plaintiff also proffers a statement allegedly made by Milo Evans, plaintiff's supervisor, in 1989. Plaintiff alleges that in or about 1989, Milo Evans instructed him to hire a younger employee for a position on the Systems Team. Specifically, plaintiff was reviewing the applications of various applicants for the position of Manufacturing Systems Analyst. Campbell selected Wayne Olson [12] over an older qualified employee based on Milo Evans's direction. (Campbell Aff. at 6–7.) It is crucial to keep in mind, however, that statements or remarks indicating age bias do not inevitably prove that age played a part in a particular employment decision. *McCarthy,* 924 F.2d at 686. The plaintiff must produce some evidence indicating that the employer actually relied on his age in making the decision. *Id.; see also Hong v. Children's Memorial Hosp.,* 993 F.2d 1257, 1266 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1372, 128 L.Ed.2d 48 (1994). Consequently, "[u]nless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be

---

**12.** The court assumes that plaintiff is speaking of Warren Olson, a systems analyst on the Systems Team, because there was no one named Wayne Olson on that team. *(See* Plaintiff's Ex. B.)

evidence of a discriminatory discharge." *McCarthy*, 924 F.2d at 686–87.

██ In the present case, the statement made by Evans was wholly unrelated to the decision to terminate plaintiff and occurred two years before plaintiff's termination. "Liability ... does not turn on the bigotry of company managers unless that bigotry resulted in injury to the plaintiff. A showing of other instances of discrimination in the company may have evidentiary value, but it is not a substitute for a showing of injury to the plaintiff." *Chambers v. American Trans Air, Inc.*, 17 F.3d 998, 1004 (7th Cir.1994) (evidence of pervasive sex discrimination in company insufficient to avert summary judgment in disparate treatment claim); *see also Bruno v. City of Crown Point*, 950 F.2d 355, 362 (7th Cir.) (sex-biased questions in interview insufficient to show gender discrimination; plaintiff "must show that the employer actually relied on her gender in making its decision."), *cert. denied*, —— U.S. ——, 112 S.Ct. 2998, 120 L.Ed.2d 874 (1992).

To say that Evans's statement cannot prove intentional age discrimination is not to say that the statement is irrelevant to plaintiff's claim of discriminatory discharge. On a motion for summary judgment, the evidence must be viewed in the light most favorable to the plaintiff. The burden-shifting formulation was created precisely because direct evidence of discrimination is often nonexistent. Thus, "[e]mployees must necessarily take full advantage of such statements if and when they are made." *Greanias v. Sears, Roebuck & Co.*, 774 F.Supp. 462, 473 (N.D.Ill.1991) (assuming that age-biased statement made two years prior to employment decision showed indication of age as motivating factor in employer's decision to terminate plaintiff). Therefore, the court assumes that plaintiff has presented sufficient evidence to shift the burden of persuasion to the defendant.

Operating under the assumption that plaintiff has presented sufficient evidence to show that age was a motivating factor in his discharge, defendant must prove by a pre-

ponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's age into account. " 'As in any tort case, statutory or otherwise, a plaintiff cannot win a discrimination case if the harm to him would have been the same whether or not the defendant had discriminated.' " *Gilty v. Village of Oak Park*, 919 F.2d 1247, 1253 (7th Cir.1990) (quoting *Washington v. Electrical Joint Apprenticeship & Training Comm.*, 845 F.2d 710, 712 (7th Cir.), *cert. denied*, 488 U.S. 944, 109 S.Ct. 371, 102 L.Ed.2d 360 (1988)). Although " 'mixed motives' situations are ordinarily not grist for the summary judgment mill," *Adler v. Madigan*, 939 F.2d 476, 479 (7th Cir. 1991),[13] the court concludes that defendant has met its burden of establishing that no genuine issue of material fact exists on this element. It is undisputed that Fasco suffered serious economic losses in 1990. The losses continued in January 1991, as profits for that month were $393,000, down from $1,052,000 in January of 1990. Based on this continuing decline of profits, Evans determined that cost reduction programs needed to be implemented. In February 1991, the president of Fasco instituted a salary freeze and directed Evans to cut costs by eliminating three positions within the Systems Team. Following that directive, Evans terminated two Systems Team members, plaintiff and Warren Olson, and transferred a third, Richard Clermont, to an open computer programming position in another department. (Defendant's 12(m) Statement at 8–9.)

Evans testified at his deposition that he terminated plaintiff because he determined that Campbell's position as Systems Team Manager was no longer needed. (Evans Dep. at 32.) He believed that, in the face of a RIF, Fasco's Motors Division needed hands-on systems people whom Evans referred to as "doer[s]." (*Id.*) Although plaintiff argues that he had experience as a "doer," he has not indicated that he ever performed programming functions at Fasco. Instead, he states that he "had over ten (10) years experience installing, programming

---

**13.** The *Adler* court itself affirmed summary judgment for the defendant-employer, concluding that there was no genuine issue of material fact that the defendant would have terminated the plaintiff even if it did not consider an improper motive.

and implementing systems for manufacturing companies prior to working for Fasco." (Campbell Aff. at 4.)

In addition, Evans testified that plaintiff's prior performance problems influenced his decision to terminate plaintiff. (Evans Dep. at 96, 137–38.) For example, Evans testified that "[Campbell] was unable, because of his highly technical orientation, to understand the needs of one group as it relates to another group and put it all together.... He was unable to take pieces of information from various groups and pull all that information together and determine what was the best solution." (*Id.* at 37.) This assessment of plaintiff's performance is documented in a memorandum to plaintiff dated May 2, 1990. In this memo, Evans indicated that plaintiff had difficulty in solving problems that arose during implementation of the computer system.

Plaintiff also received a performance evaluation, dated February 1990, which states that plaintiff "[r]arely takes the lead or advances new and unique ideas"; that his "[d]ecisions [are] generally shallow and haphazard leading to marginal performance"; that he "[f]ails to interact with [other managers] and acts in a manner which excludes cooperation"; and that he "has difficulty in dealing with fellow employees/customers and displays only marginal understanding of the reasons people behave as they do." The overall rating noted on this evaluation was "unacceptable." (Defendant's Ex. 4.)[14]

 Based on Evans's assessment of the needs of the Systems Team in the face of the RIF and plaintiff's prior performance deficiencies, Evans decided to terminate plaintiff, rather than transfer him to another position. While a plaintiff is not required to link discriminatory statements directly to his termination, he must offer enough to support a reasonable inference that the impermissible intent was in operation in his case. *See, e.g., Sprague v. Navistar Int'l Transp. Corp.*, 838 F.Supp. 1268, 1274–75 (N.D.Ill.1993). This plaintiff has not done. In light of the overwhelming evidence supporting defendant's

proffered reasons for plaintiff's termination, defendant has met its burden of proving that a reasonable jury could find that plaintiff was not terminated because of his age. Thus, plaintiff has failed to present a genuine issue of material fact for trial under the direct method. Plaintiff, however, still can avoid summary judgment by establishing that a reasonable trier of fact may find age discrimination under the indirect method. *See McCoy*, 957 F.2d at 371 ("Where a plaintiff can offer no direct, 'smoking gun' evidence of age discrimination, the burden-shifting method affords an alternate route to relief.").

## B. *Indirect Method*

 In a RIF case, a plaintiff can establish a *prima facie* case by showing: (1) that he was within the protected age group (over 40); (2) that he was performing according to his employer's legitimate expectations; (3) that he was terminated; and (4) that others not in the protected class were treated more favorably. *Smith*, 876 F.2d at 1318. "If a plaintiff makes this showing, a rebuttable presumption of discrimination arises and the burden of production shifts to the defendant employer to articulate legitimate and nondiscriminatory reasons for the discharge." *Id.* " 'This burden is only one of production, as the "ultimate burden of persuading the trier of fact that the [employer] intentionally discriminated against the [employee] remains at all times with the [employee].'" *Daugherity v. Traylor Bros., Inc.*, 970 F.2d 348, 354 (7th Cir.1992) (citations omitted). If the defendant satisfies its burden of production, the presumption of discrimination dissolves and the burden shifts back to the plaintiff " ' " to prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination." ' " *Id.* (citations omitted).

### 1. *Prima Facie Case*

Defendant concedes that plaintiff has established three of the four elements of this test. Plaintiff was within the protected age

---

**14.** Plaintiff, of course, denies that his performance was poor. However, he does not deny that he received both the performance evaluation and the memorandum written by Evans. (Plaintiff's 12(n) Statement at 2–3.)

group (55) and was terminated. Three members of the Systems Team who were not in the protected age group were treated more favorably in that they were not terminated due to the RIF. Defendant, however, contends that plaintiff has failed to establish the second element of the test—that he was performing according to his employer's legitimate expectations.

 ·However, the plaintiff's initial burden of proving a *prima facie* case is " 'not onerous.' " *Veatch v. Northwestern Mem. Hosp.*, 730 F.Supp. 809, 818 (N.D.Ill.1990) (citations omitted). Consequently, a plaintiff can establish the second element of the *prima facie* case through his own testimony that his performance was satisfactory. *E.g., Weihaupt*, 874 F.2d at 428.

 ·Plaintiff has submitted his own affidavit that he performed his job satisfactorily. In his affidavit, plaintiff claims that he had a thorough understanding of Fasco's business methods and needs and that he was able to analyze systems problems and develop solutions to solve problems that arose during implementation of computer systems. (*See generally* Campbell Aff.) Plaintiff's submissions therefore establish a *prima facie* case of age discrimination.

### 2. *Legitimate, Nondiscriminatory Reason*

 Defendant offers several reasons in support of its decision to terminate plaintiff. First, it is undisputed that Fasco incurred financial difficulties in 1990 and 1991, leading to the elimination of three positions on the Systems Team. (Defendant's 12(m) Statement at 8–9.) Second, Evans testified that the Systems Team did not need a full-time manager. (Evans Dep. at 32.) Third, in deciding to terminate plaintiff, Evans considered plaintiff's prior performance problems.

(Evans Dep. at 96, 137–38.)[15] Defendant's evidence of the RIF, as well as the reasons behind its decision to terminate plaintiff, constitutes a legitimate, nondiscriminatory reason for plaintiff's termination. *See, e.g., Smith*, 876 F.2d at 1322 (RIF and negative performance evaluation of plaintiff constitutes legitimate, nondiscriminatory reason for plaintiff's discharge). Thus, the burden shifts back to plaintiff to persuade the court that these reasons advanced by defendant are a pretext for discrimination.

### 3. *Evidence of Pretext*

 A plaintiff may demonstrate pretext in any one of three ways. He can attempt to establish that the proffered reasons (1) had no basis in fact, (2) did not actually motivate the discharge, or (3) were insufficient to motivate the discharge. *Grohs v. Gold Bond Building Prods.*, 859 F.2d 1283, 1286 (7th Cir.1988), *cert. denied*, 490 U.S. 1036, 109 S.Ct. 1934, 104 L.Ed.2d 405 (1989). Because the presumption of discrimination has been dropped at this point of the analysis, the court's inquiry is limited to whether defendant gave an honest explanation for its behavior. *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir.1988). Although plaintiff has offered evidence which he argues shows defendant's proffered reasons for plaintiff's termination was a pretext for discrimination, the court concludes that plaintiff has failed to present sufficient evidence to lead a reasonable jury to this conclusion.[16]

#### a) *Plaintiff's claim that he performed satisfactorily*

Plaintiff offers two assertions in support of his claim that he was performing satisfactorily. First, he proffers his sworn statement that he was performing adequately and, thus, should not have been fired. Second, he as-

---

**15.** The court will not recount the evidence defendant has submitted in support of its proffered reasons for terminating plaintiff, as this evidence has already been discussed at great length under the court's analysis of the direct method of proof.

**16.** Plaintiff offers a multitude of arguments which he claims shows pretext, yet, as with the rest of his memorandum, he has not organized his arguments in a coherent manner. Neverthe-

less, the court can conclude plaintiff has offered no evidence that defendant's reasons for plaintiff's termination did not actually motivate his discharge or that they were insufficient to motivate his discharge. Therefore, the court assumes that plaintiff is attempting to show that defendant's reasons for terminating him had no basis in fact.

serts (and it is undisputed) that he received bonuses in 1989 and 1990.

▉ Plaintiff's own assertions that he was performing satisfactorily are entitled to little, if any, weight. "An employee's burden to show that his employer's asserted justification for termination is actually only a pretext for ... discrimination is, in contrast to what we will accept at the prima facie stage, infinitely more rigorous...." *Bush v. Commonwealth Edison Co.,* 778 F.Supp. 1436, 1443 (N.D.Ill.1991), *aff'd,* 990 F.2d 928 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1648, 128 L.Ed.2d 367 (1994). Plaintiff does not deny that he received a written memorandum from Evans which was critical of plaintiff's performance. (Plaintiff's 12(n) Statement at 3) ("Plaintiff states that the May 2, 1990, memo speaks for itself."). Instead, plaintiff generally disputes Evans's assessment of his performance. (*Id.*) Yet, the Seventh Circuit has emphasized that "a plaintiff's self-serving testimony regarding his own ability is 'insufficient to contradict an employer's negative assessment of that ability.'" *Aungst v. Westinghouse Elec. Corp.,* 937 F.2d 1216, 1223 (7th Cir.1991) (quoting *Williams v. Williams Electronics, Inc.,* 856 F.2d 920 at 924 (7th Cir.1988)); *see also Dale,* 797 F.2d at 464 (summary judgment for employer affirmed where plaintiff did no "more than challenge the judgment of his superiors through his own self-interested assertions").

Moreover, plaintiff offers no evidence regarding the performances of the retained workers. He merely states that he was better qualified and could accomplish tasks that other members of the Systems Team could not. (Campbell Aff. at 2–3.) The employee's perception of himself is irrelevant. "'It is the perception of the decision maker which is relevant.'" *Dale,* 797 F.2d at 464–65 (citation omitted).

Plaintiff does, however, present objective evidence that he was performing satisfactorily before the RIF. It is undisputed that plaintiff received bonuses in 1989 and 1990. (Defendant's 12(m) Statement at 6–7.) Neither party, however, has submitted evidence as to how these bonuses compared to the bonuses of other Fasco managers or if those employees received bonuses at all. Plaintiff contends that the bonuses must have been merit-based because he was never authorized to award bonuses to his inferiors who did not perform adequately. (Plaintiff's 12(n) Statement at 2.) Defendant, on the other hand, claims the bonuses were gifts. (Defendant's 12(m) Statement at 6–7.) The court need not—not to mention cannot at the summary judgment stage—resolve this factual issue because it is immaterial. Thus, the court assumes that plaintiff was performing satisfactorily before the RIF.

Nevertheless, evidence that plaintiff was performing satisfactorily, in the sense that he would not have been terminated but for the RIF, does not challenge defendant's reasons for terminating plaintiff. "'[T]o show pretext, it does not help for [the plaintiff] to repeat the proof that his job performance was generally satisfactory. That question has already been resolved in his favor. The Company advanced specific reasons for his discharge, and his rebuttal evidence should be focused on them.'" *Aungst,* 937 F.2d at 1223 (quoting *La Montagne,* 750 F.2d at 1414). In *Aungst,* the defendant employer stated that it had fired the plaintiff employee due to a RIF because it needed more versatility on the engineering staff. (*Id.* at 1218.) The plaintiff attempted to show pretext by offering evidence of a "merit pay increase shortly before his termination; Performance Management System charts that described his good work performance; and a letter of recommendation written by his former boss to help him in an application for a teaching position." (*Id.* at 1223.) The court held that the plaintiff had not rebutted the defendant's articulated reason for terminating plaintiff because plaintiff's evidence did not speak directly to the proffered reason for the termination—lack of versatility. *Id.*

▉ Plaintiff's evidence is deficient in the same manner. Evans testified that the Systems Team no longer needed a manager that did not also perform hands-on functions. (Evans Dep. at 32.) Plaintiff does not dispute that he did not work as a programmer during his tenure at Fasco. (*See generally* Campbell Aff. at 1–3.) The fact that Fasco had a copy of plaintiff's resume, indicating

plaintiff's prior experience as a programmer (Campbell Aff. at 4–5) does not undermine Evans's decision that employees on the Systems Team who were performing programming functions at the time of the RIF were more qualified to continue programming after the RIF. The court will not " 'reevaluate business decisions made in good faith.' " *Aungst,* 937 F.2d at 1224 (quoting *Bechold v. IGW Sys., Inc.,* 817 F.2d 1282, 1285 (7th Cir.1987)). " 'It is enough if the decision was "genuinely and honestly made in an attempt to select the employees to be retained on the basis of performance related considerations." ' " *Id.* (citation omitted).

### b) *Plaintiff's claim that he was needed on the Systems Team*

Plaintiff argues that Evans was wrong in concluding that plaintiff was not needed on the Systems Team. (Plaintiff's Memorandum at 9.) In support of his argument, plaintiff states that he was still working on several projects that were assigned to him by Evans, including (1) "support[ing] and continu[ing] development of an Engineering Documentation System and explor[ing] and implement[ing] new applications of this technology at the various plants," and (2) "support[ing] the development of a Purchasing EDI Prototype System for selected vendors for Division Purchasing Systems." (Campbell Aff. at 8.) Nevertheless, if Fasco was mistaken about plaintiff's worth on the Systems Team, this is of no import to plaintiff's claim as long as defendant's explanation is credible.

Defendant asserted that plaintiff was terminated because Evans felt the Systems Team did not need a manager that did not also perform programming functions. (Defendant's 12(m) Statement at 10.) Plaintiff has not alleged that he did perform programming functions at Fasco; he merely disputes Evans's assessment of the needs of the Systems Team. (*See* Plaintiff's 12(n) Statement at 3.) However, even if Fasco made a bad decision in firing plaintiff, even if the Systems Team could not function without plaintiff, the court cannot interfere. "It is not the court's duty to determine the validity of the defendant's business decision as long as the

decision was made in good faith." *Dorsch v. L.B. Foster Co.,* 782 F.2d 1421, 1426 (7th Cir.1986). " 'If you honestly explain the reasons behind your decision, but the decision was ill-informed or ill-considered, your explanation is not a pretext.' " *Bruno,* 950 F.2d at 364 (quoting *Pollard v. REA Magnet Wire Co.,* 824 F.2d 557, 559 (7th Cir.), *cert. denied,* 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987)).

### c) *Plaintiff's claim that Evans did not have sufficient information to evaluate him*

Plaintiff argues that "Evans did not have sufficient opportunity to form an opinion of Plaintiff's performance." (Plaintiff's Memorandum at 7.) In support of this argument, plaintiff states that Evans's office was in St. Louis, Missouri, while Campbell's office was in Springfield, Missouri. (*Id.;* Evans Dep. at 17.) As a result, Evans only met with Campbell once every three to four weeks. (Plaintiff's Memorandum at 7; Evans Dep. at 18.) Once again, plaintiff asks the court to become involved in the managerial affairs of Fasco, a task the court cannot and should not undertake. Plaintiff has offered no evidence regarding how plaintiff's level of supervision compared to other, younger employees. "The party resisting the summary judgment motion may not rest on mere allegations." *Klein v. Trustees of Indiana Univ.,* 766 F.2d 275, 283 (7th Cir.1985) (citing *Posey v. Skyline Corp.,* 702 F.2d 102 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983)). If plaintiff offered evidence that Evans's lack of continuous supervision was related to his age (for example, if younger managerial employees were supervised more closely), the fact that Evans only met with plaintiff once every three to four weeks might be evidence of age discrimination. However, plaintiff has offered no such evidence and, consequently, the frequency of Evans's contact with plaintiff is not evidence of pretext.

### d) *Plaintiff's claim that the 1990 performance evaluation was a sham*

Plaintiff claims that his performance review in 1990 was a sham—a ploy to get rid of him because of his age. (Plaintiff's Memo-

randum at 8.) In support of this argument, plaintiff alleges that he "had never received an evaluation in this detail and format in the past, and ... never saw such a format again," either as an employee or as a supervisor. (Campbell Aff. at 5.) This general statement, however, is insufficient to show pretext. Plaintiff has offered no evidence that the company did not use such an evaluation form or did not use the form on a regular basis. And, in fact, defendant has submitted seventeen performance reviews of other Fasco employees in a format the same or substantially similar to plaintiff's performance review. (Schulz Aff. at 1 & Ex. 1.) Thirteen of these seventeen reviews predate plaintiff's review. (*See id.* Ex. 1.) Because plaintiff is unable to support the argument that his performance review was a mask for discrimination, that argument is entitled to no weight. *See Anderson,* 965 F.2d at 402 ("[Plaintiff's] theory that [his supervisor's] memos and ... complaint letters were manufactured in an attempt to justify his firing is, at best, speculation, and speculation is not enough to avoid summary judgment.").

### e) *Plaintiff's claim that the evaluation was subjective and, thus, could mask discrimination*

Plaintiff argues that his 1990 evaluation was based on a subjective assessment of plaintiff's abilities and, therefore, is a pretext for discrimination. (Plaintiff's Memorandum at 5.) Nevertheless, a subjective assessment is not per se indicative of an illegal motive. *Dorsch,* 782 F.2d at 1427 ("A subjective qualification assessment does not convert an otherwise legitimate reason into an illegitimate one."). Indeed, "[d]ecisions such as these will always involve a number of subjective factors, and disappointed candidates cannot expect a federal judge to intervene simply in the hope that he or she will evaluate the factors differently." *Parker,* 741 F.2d at 981.

Plaintiff has presented no evidence showing that other, younger employees were given objective evaluations and, therefore, the

allegation that plaintiff's evaluation was subjective does not show pretext. *Cf. Christie v. Foremost Ins. Co.,* 785 F.2d 584, 586 (7th Cir.1986) (proof of pretext where plaintiff offered evidence showing his evaluations were based on objective criteria while younger employee's evaluations were wholly subjective). Moreover, plaintiff admits receiving a memo from Evans discussing plaintiff's poor job performance. In this memo, Evans identified two specific instances of problems plaintiff had in performing his duties. Plaintiff does not mention these specific instances of his performance problems in his argument that Evans's assessment of his ability was merely subjective. Consequently, plaintiff has presented no valid factual evidence regarding his performance evaluation from which one could infer pretext.

### f) *Plaintiff's claim that three of the five people who allegedly complained to Evans about plaintiff's performance denied having done so*

Finally, plaintiff attempts to show pretext by arguing that three of the five people whom Evans stated complained to him about plaintiff's performance testified in their depositions that they had never spoken to Evans about plaintiff's performance.[17] Evans testified that employees Dwight Gressel, Rick Green and Kenneth Hammarstrom complained to him about plaintiff's performance. (Evans Dep. at 49, 53, 55.) However, these three employees testified that they did not discuss plaintiff's performance with Evans. (Gressel Dep. at 89–92; Hammarstrom Dep. at 10–11; Green Dep. at 6–7.)

Nevertheless, even if some of the employees Evans believed complained to him did not actually do so, this evidence does not raise doubts as to the genuineness of defendant's termination decision. "It is not enough for the plaintiff to simply assert that the acts for which [he] was terminated did not occur." *Billups v. Methodist Hosp.,* 922 F.2d 1300, 1304 (7th Cir.1991). Plaintiff's evidence may

---

17. Plaintiff also claims that the two other employees (Roger Cobb and Mo Castleberry) who allegedly spoke to Evans about plaintiff's performance told him that they never complained to Evans about plaintiff's performance. Plaintiff's only proof of these comments, however, is his own statement (Campbell Aff. at 6), and his statements as to what other workers told him would not be admissible at trial. As such, they cannot be considered on a motion for summary judgment. *See* Fed R.Civ.P. 56(e).

# 1402

indicate that plaintiff's skills were better than Evans thought. Nevertheless, "an ill-informed decision or an ill-considered decision is not automatically pretextual if the employer gave an honest explanation for termination." *Id.* at 1304.

Plaintiff's evidence might be substantial evidence of pretext if this were the only negative assessment of plaintiff's performance. *See Jang v. Biltmore Tire Co.*, 797 F.2d 486, 489–90 (7th Cir.1986) (plaintiff must offer substantial evidence that defendant's articulated reasons are unworthy of credence). However, defendant did not claim to terminate plaintiff solely on the basis of the alleged complaints by these individuals. On the contrary, defendant asserted that it fired plaintiff because of the RIF, because Evans determined that the Systems Team did not need a full-time manager, and because of plaintiff's prior performance deficiencies. Evans's memo to plaintiff noted specific problems that plaintiff had in ascertaining solutions to problems the Systems Team encountered. (*See* Defendant's 12(m) Statement at 7–8.) In this situation, the court "does not sit as a super-personnel department that reexamines an entity's business decisions." *Dale,* 797 F.2d at 464.

In sum, plaintiff has not raised a genuine issue of material fact as to whether defendant's explanation for plaintiff's termination was a pretext for discrimination. Defendant is accordingly entitled to judgment as a matter of law.

## CONCLUSION

Defendant's Motion for Summary Judgment is granted. Judgment entered on behalf of defendant and against plaintiff.